IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DALE BRADEN AND SHERRILL BRADEN, | NO. 3:13-CV-01090-HZ |
| Plaintiffs, | OPINION & ORDER |
| v. | |
| PNC BANK, N.A., | |
| Defendant. | |

Sandy N. Webb
Law Offices of Sandy N. Webb, P.C.
Skyline Building
0224 SW Hamilton St.
Suite 202
Portland, OR 97239

    Attorney for Plaintiffs

Peter J. Van Zandt
LeClairRyan
44 Montgomery St.
18th Floor
San Francisco, CA 94104

\ \ \

1 - OPINION & ORDER

Stephen P. Yoshida
Michael A. Yoshida
Martin Bischoff Templeton Langslet & Hoffman
888 SW Fifth Avenue
Suite 900
Portland, OR 97204

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiffs Dale and Sherrill Braden bring this foreclosure-related action against Defendant PNC Bank, alleging that it breached a loan modification agreement and wrongfully foreclosed on their property, breached its duty of good faith and fair dealing, and trespassed on their property. Defendant moves for summary judgment. I grant Defendant's motion because Plaintiffs repudiated the loan modification and waived their right to enforce it, Defendant's alleged breach did not cause Plaintiffs' damages, and the contract expressly permitted Defendant's conduct.

## BACKGROUND

      Plaintiffs Dale and Sherrill Braden purchased their home in 2008 with a mortgage from National City Mortgage, which was later acquired by Defendant PNC Bank. Plaintiffs stopped making mortgage payments around April or May 2010. On August 25, 2010, Plaintiffs signed a loan modification agreement (the "August modification"). Compl. ¶ 9. Defendant signed that agreement on August 31, 2010. Compl. ¶ 8. When Plaintiffs submitted the signed agreement to Defendant, they also included a check for the amount due, $1,435.90. Compl. ¶ 9. Defendant cashed that check, but on September 18, 2010, it sent Plaintiffs a check for the same amount along with a letter that read, "[t]he enclosed check for $1,435.90 is being returned to you because the amount received is not sufficient to reinstate your loan from default." Compl. Ex. 3. Plaintiffs called Defendant three times for an explanation, Yoshida Decl. Ex. 1, at 3, but they "could never find a human [at PNC] to talk with that seemed to know anything about" the August modification. Pls.' Resp. Ex. 4, at 3 (Dale Braden Depo. 48:10-12). One PNC representative did tell them, however, that according to PNC's system, the modification was approved. Yoshida

2 - OPINION & ORDER

Decl. Ex. 1, at 3. Later, a PNC representative admitted in a deposition that returning the check was "an accident." Pls.' Resp. Ex. 5 (McGrew Depo. 16:22). Defendant explains that "soon after receiving the August 2010 modification agreement and payment, PNC determined that the monthly payment amount of . . . $1,435.90 . . . was out of tolerance with Fannie [Mae] modification guidelines and required a $10.47 correction to . . . $1,446.37[.]" Def.'s Mem. 3-4.

Plaintiffs assert that nobody told them to resubmit the $1,435.90 check to Defendant. See Pls.' Resp. Ex. 4, at 5 (Dale Braden Depo. 69:10-13) ("[W]e couldn't get them to even say there was a modification so why would they ask for payment for something that they say doesn't exist?"); Yoshida Decl. Ex. 11, at 9 (Dale Braden Depo. 34:7-12). Later, Dale Braden stated Defendant or ServiceLink[1] told him not to send in a check but rather to work for another loan modification. Pls.' Resp. Ex. 4, at 10 (Dale Braden Depo. 77:4-8)..

Defendant, however, states that according to "PNC's call log, Plaintiffs were told to resend the $1,435.90 because it was returned to them in error, and were further advised that a corrected modification agreement would be sent to them." Def.'s Mem. 4. That call log, though, indicates Defendant did not speak directly to Plaintiffs, but rather it left them a voicemail. See Justice Decl. Ex. A, at 1 (PNC call log from 10/1/10 noting, "B needs to send back the funds for the mod per lmt it was sent back in error *l/m on recorder*") (emphasis added).

Plaintiffs did not return the check or make another payment. Dale Braden explained: "What's the point? They already sent [the August check] back. It was . . . like I say, talking with them, if they don't get it on the phone, they're just not going to get it." Pls.' Resp. Ex. 4, 4-5 (Dale Braden Depo. 68:25-69:5).

On October 13, 2010, Plaintiffs wrote Defendant a letter requesting a principal reduction and a corresponding reduction in monthly payments to $1,050. Yoshida Decl. Ex. 2. Notwithstanding that letter, Plaintiffs thought the August modification had been fully executed by both parties. Pls.' Resp. Ex. 4, at 4 (Dale Braden Depo. 67:16-25). However, Defendant points

---

[1] ServiceLink was a mortgage servicer working with Defendant.

3 - OPINION & ORDER

out the letter did not "state that the August 2010 modification agreement had been breached, did not mention that the $1,435.90 payment had been returned, and did not provide any indication that Plaintiffs desired to enforce the August 2010 modification." Def.'s Mem. 4. Nor did Plaintiffs mention the August modification in any subsequent letter or phone call. See e.g., Def.'s Mem. 9. Plaintiffs explained: "[We were] frustrated that we could never get them to even acknowledge that it existed so if we write to them and say – mention this thing, they're going to go well, what the heck are you talking about?" Pls.' Resp. Ex. 4, at 4 (Dale Braden Depo. 66:17-22).

On November 18, 2010, Defendant sent Plaintiffs a new loan modification proposal with monthly payments of $1,446.37. Justice Decl. Ex. C; Pls.' Resp. Ex. 3. That proposal also requested that Plaintiffs "enclose certified funds paid to the order of PNC Mortgage in the amount of: $10.47." Pls.' Resp. Ex. 3, at 1. The proposal did not explain the $10.47 charge, although Defendant characterizes the proposal as "the corrected modification agreement reflecting a $10.47 change from the August 2010 modification agreement."[2] Def.'s Mem. 5.

Plaintiffs believed the November 2010 proposal "raised the payments like $111 a month," and they "didn't understand what that was about." Yoshida Decl. Ex. 11, at 9 (Dale Braden Depo. 34:17-25). Plaintiffs "had no clue what the heck [Defendant was] doing," stating: "A loan modification and you only want $10 for it? . . . [I]t seemed kind of preposterous. . . . [We had] loans modified [before] . . . and there's always . . . way more than $10" that had to be paid. Pls.' Resp. Ex 4, at 3 (Dale Braden Depo. 46:17-25). Plaintiffs were "happy with the modification [they had]." Yoshida Decl. Ex. 11, at 9 (Dale Braden Depo. 34:20-21). But they thought, "if [Defendant was] going to try to renegotiate," then they were going to revise the proposal "so that it would make [their] budget better." Yoshida Decl. Ex. 11, at 9 (Dale Braden Depo. 34:17-25). They revised the proposal to reduce the monthly payments from $1,446.37 to $1,010.20. Pls.'

---

[2] This coincides with the November 16, 2010 loss mitigation report that indicated the monthly payments were out of tolerance with Fannie Mae guidelines and needed to be adjusted and resent to Plaintiffs. See Justice Decl. Ex. B.

4 - OPINION & ORDER

Resp. Ex. 3; Def.'s Mem. 5. Plaintiffs returned the revised proposal to Defendant on November 20, 2010 and included a check for $10.47. Yoshida Decl. Ex. 3, at 1. "Interpreting Plaintiffs' November 2010 modification proposal as a rejection of the loan modification process," Defendant informed Plaintiffs on December 8, 2010 that "they were no longer under a modification review because, 'based on a recent conversation or document received, [they were] no longer interested in a loss mitigation alternative.'" Def.'s Mem. 5 (quoting Yoshida Decl. Ex. 4).

On December 2, 2010, Plaintiffs were notified that Defendant would foreclose on their property on April 11, 2011. Compl. ¶ 12.

On January 9, 2011, Plaintiffs wrote to Defendant "one more time to request [their] loan be modified to reduce the rate and principal on [their] mortgage to adjust [their] payment to a manageable amount." Yoshida Decl. Ex. 5, at 1. In that letter, Plaintiffs stated that Defendant "offered to lower the total monthly payment from $1,786.04 . . . to $1,446.37" and they rejected that offer because it was "still too high for [their] budget to work." Id. Instead, Plaintiffs proposed a monthly payment between $873 and $1,222 per month. Id.

Plaintiffs then stated in a March 2011 letter that they had "located alternate housing for $1,050 per month and [were] prepared to move in April" if their mortgage was not lowered to monthly payments of less than $1,222. Id. Ex. 7. Defendant rejected the proposal and the mortgage was not modified. Id. Ex. 8.

Believing Defendant would foreclose on April 11, 2011, Plaintiffs moved out in early April. Pls.' Resp. Ex. 4, 8-9 (Dale Braden Depo. 72:13, 74:8-11). Except for the August 25, 2010 payment Defendant returned to Plaintiffs in September 2010, Plaintiffs never made a mortgage payment after April or May 2010. Defendant foreclosed on the property in September 2011. Def.'s Mem. 3.

## STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

5 - OPINION & ORDER

moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

In support of its motion, Defendant relies on the following arguments: 1) Plaintiffs abandoned and waived the right to seek enforcement of the loan modification agreement; 2) Plaintiffs repudiated the loan modification agreement; 3) Defendant's alleged breach did not cause Plaintiffs' damages; 4) Plaintiffs did not suffer lost equity and are not entitled to seek recovery for lost ability to earn equity; and 5) Plaintiffs are not entitled to seek recovery for lost mortgage tax credits. Because I conclude Plaintiffs repudiated the August modification and waived their right to enforce it, and that Defendant's alleged breach did not cause Plaintiffs'

6 - OPINION & ORDER

damages, I do not address Defendant's other arguments. I also grant summary judgment to Defendant on Plaintiffs' trespass and breach of good faith and fair dealing claims because the underlying Deed of Trust and the August modification expressly allowed Defendant's conduct.

**I.      Repudiation and Waiver**

"A party repudiates a contract when its conduct evinces a fixed purpose not to perform the contract." Butler Block, LLC v. Tri-Cnty. Metro. Transp. Dist. of Or., 242 Or. App. 395, 410, 255 P.3d 665, 674 (2011). Repudiation must be "motivated by a positive, definite, absolute, unconditional and unequivocal intent evincing a fixed purpose not to perform in any event." Mohr v. Lear, 239 Or. 41, 49, 395 P.2d 117, 121 (1964). "In resolving contract-related issues, Oregon courts adhere to an objective theory under which objective manifestations of intent control rather than the parties' uncommunicated subjective understanding." Butler Block, 242 Or. App. at 410.

"Waiver refers to the intentional relinquishment of a known right, claim or privilege." Daly v. Fitch, 70 Or. App. 18, 22, 687 P.2d 1124, 1127 (1984). "A waiver may be inferred from the party's conduct, provided that the conduct is clear, unequivocal, and decisive in manifesting an intention to waive a right to performance." Soliz v. Jimenez, 222 Or. App. 251, 259, 193 P.3d 34, 39 (2008).

Defendant argues Plaintiffs' conduct and statements repudiated the August modification and waived their right to enforce it. The record shows Plaintiffs attempted to make only one mortgage payment between May 2010 and April 2011—the returned August 25, 2010 payment. They called Defendant three times between September 28, 2010 and September 30, 2010 to learn why Defendant returned that payment. Yoshida Decl. Ex. 1, at 3. They never got a straight answer, leaving them so frustrated they stopped calling and did not mention the August modification in any further negotiations with Defendant. See Pls.' Resp. Ex. 4, at 4 (Dale Braden Depo. 66:12-22). Plaintiffs allege they were not told to make another payment, but instead were told to work for another modification, which they did. Id. at 10 (Dale Braden Depo. 77:4-8). Furthermore, Plaintiffs believed the August modification was enforceable and they were "happy"

7 - OPINION & ORDER

with it, but if Defendant was "going to try to renegotiate" then they would try to get more favorable terms. Yoshida Decl. Ex. 11, at 9 (Dale Braden Depo. 34:17-25). These facts, viewed in the light most favorable to Plaintiffs, do not establish that Plaintiffs unequivocally manifested an intention not to perform under the August modification or to waive their right to it because a reasonable jury could conclude Plaintiffs were committed to reaching an agreement with Defendant, under which they would perform and remain in their home.

However, in January 2011, Plaintiffs told Defendant that a monthly mortgage payment of $1,446.37 (about ten dollars more than they agreed to in the August modification) was "too high for [their] budget to work." Id. Ex. 5, at 1. Plaintiffs instead requested monthly payments between $873 and $1,222. Id. In March 2011, Plaintiffs repeated that request, and also declared they had located alternate housing for $1,050 per month and were prepared to move in April [2011] if [Defendant could not] offer [them] an affordable mortgage." Id. Ex. 7. Defendant denied their request to modify their monthly payments to $1,222 or less, and Plaintiffs moved out of the house in April 2011.

Even viewed in a light most favorable to Plaintiffs, Plaintiffs' conduct and statements beginning in January 2011 show they unequivocally manifested an intention to not perform under the August modification and to waive their right to enforce it. If Plaintiffs could not afford monthly payments of $1,446.37, then they could not afford the August modification payments of $1,435.90 under the August modification. And when they threatened in their March 2011 letter to move out of the house absent a significantly lower monthly payment, and then carried out that threat in April 2011, Plaintiffs showed they no longer wanted to be bound to the August modification, or to any modification with payments of more than $1,222. Accordingly, Plaintiffs repudiated the August modification and waived their right to enforce it.

**II.    Causation**

To recover damages for a breach of contract, "a plaintiff must show that his or her harm was both the factual and the foreseeable consequence of the defendant's conduct." Wilcher v. Amerititle, Inc., 212 Or. App. 498, 506, 157 P.3d 790, 794 (2007) (citations omitted). A

8 - OPINION & ORDER

foreseeable consequence is one that "ordinarily follows the breach of . . . a contract in the usual course of events, or that reasonable [people] in the position of the parties would have foreseen as a probable result of breach." Cont'l Plants Corp. v. Measured Mktg. Serv., Inc., 274 Or. 621, 626, 547 P.2d 1368, 1371 (1976) (internal quotation marks and citation omitted).

In this case, Defendant argues Plaintiffs cannot seek damages based on it returning their August 25, 2010 payment because returning that payment did not cause the foreclosure or Plaintiffs' damages. The foreclosure, Defendant argues, was instead caused by Plaintiffs' failure to pay their mortgage for more than one year. Plaintiffs concede they attempted only one mortgage payment after May 2010, their returned August 25, 2010 payment. They argue they were never told to resend that payment or to make another payment, and that because Defendant returned the August 25, 2010 payment without explanation, it would have been futile to make another payment. They imply that but for Defendant returning that payment without explanation, they would have continued to make monthly payments. Because they were not told to make another payment, and believing Defendant would foreclose on April 11, 2011, Plaintiffs moved out of the house in early April.

Viewing the facts in a light most favorable to Plaintiffs, Plaintiffs had from September 18, 2010, when their payment was returned, until at least December 2, 2010, when Defendant initiated foreclosure,[3] to return the August 25, 2010 payment to Defendant or to make another payment. But they did not. Even assuming Plaintiffs were never told to resend the check, and even if resending the check would have been futile, Plaintiffs were still required to make subsequent monthly mortgage payments in order to stay in the house. But they did not. In fact, they told Defendant in their January 2011 letter they could not afford a monthly payment of merely approximately ten dollars more than required under the August modification. They also declared in their March 2011 letter that they would move out of the house if Defendant did not modify their mortgage payments to $1,222 or less. Viewing all of the facts in the light most

---

[3] Given that Defendant did not foreclose until September 2011, Plaintiffs arguably had until then to make a payment.

9 - OPINION & ORDER

favorable to Plaintiffs, Defendant returning Plaintiffs' August 25, 2010 payment was not a cause in fact of Plaintiffs' damages.

Similarly, Plaintiffs' damages were not a foreseeable consequence of Defendant returning the August 25, 2010 payment because foreclosure does not "ordinarily follow" the return of one mortgage payment. To the contrary, foreclosure ordinarily follows repeated failures to pay. Under any mortgage contract, every homeowner knows mortgage payments must be made in order to stay in a home. Accordingly, a reasonable person in the position of Plaintiffs and Defendant would not have foreseen foreclosure as a probable result of Defendant returning one payment. Rather, a reasonable person would have foreseen Plaintiffs resending the check, or at the very least, making the next month's payment. But Plaintiffs did neither. Thus, the foreclosure and Plaintiffs' damages were not foreseeable consequences of Defendant returning the August 25, 2010 payment.

## III.    Trespass

Plaintiffs claim Defendant trespassed when it "hired a contractor to enter the property and inspect, secure and/or check for vacancy and foreclose upon the [p]roperty." Compl. ¶ 30. Because, as I concluded above, Plaintiffs repudiated the August modification and waived their right to enforce it, Defendant rightfully foreclosed upon the property. Accordingly, the foreclosure cannot constitute a trespass.

However, Plaintiffs asserted at oral argument, for the first time, that their trespass claim is independent from the actual foreclosure because it is also based on Defendant having entered the property on August 2, 2010, before the August modification was executed, to leave Plaintiffs a message to call Defendant and to take photos of the property to ensure "the house [was] in good shape." See Yoshida Decl. Ex. 1, at 1. Defendant argued the trespass claim nonetheless still fails because the Deed of Trust allowed Defendant to enter the property. I agree.

The Deed of Trust provides:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or

10 - OPINION & ORDER

> appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.

Compl. ¶ 21. Plaintiffs failed to perform under the Deed of Trust because they made zero mortgage payments from at least May 2010 until their August 25, 2010 payment. Because Plaintiffs failed to perform, the Deed of Trust allowed Defendant to take reasonable steps to protect or assess the property. Defendant did so on August 2, 2010 when it entered the property to leave Plaintiffs a message to call Defendant and to take photos of the property. Thus, because Plaintiffs were in default on August 2, 2010 when Defendant entered the property, Defendant did not trespass.

### IV.  Good Faith and Fair Dealing

Plaintiffs claim Defendant returning their August 25, 2010 payment violated their reasonable expectations that Plaintiffs "would be allowed to perform" under the August modification, and thus Defendant breached its duty of good faith and fair dealing. But the mortgage payment process was governed by the express terms of the August modification. Therefore, Defendant returning the August 25, 2010 could, under facts different from this case, sustain a breach of contract claim, but it cannot support a claim for breach of good faith and fair dealing. See Stevens v. Foren, 154 Or. App. 52, 58, 959 P.2d 1008, 1011 (1998) ("the duty of good faith and fair dealing cannot contradict an express contractual term, nor does it provide a remedy for an . . . act that is permitted expressly by contract.") (citations omitted). Moreover, for reasons previously explained, any alleged breach did not cause Plaintiffs' damages. Thus, this claim cannot be sustained.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

11 - OPINION & ORDER

## CONCLUSION

Defendant's motion for summary judgment [15] is GRANTED.

IT IS SO ORDERED.

Dated this \_\_6\_\_ day of \_\_May\_\_, 2014

*Marco Hernández*
MARCO A. HERNANDEZ
United States District Judge

12 - OPINION & ORDER